UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANNE TAYLOR, </br></br>    Plaintiff, </br></br> v. </br></br> LELAND DUDEK,[1] </br> *Acting Commissioner of Social Security*, </br></br>    Defendant. | No. 1:24-cv-10533-JEK |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE, AND DEFENDANT'S MOTION TO AFFIRM, THE COMMISSIONER'S DECISION

**KOBICK, J.**

    Plaintiff Jeanne Taylor brings this action under the Social Security Act, 42 U.S.C. § 405(g), to challenge the final decision of the Commissioner of the Social Security Administration denying her application for Social Security Disability Insurance ("SSDI") benefits. Taylor contends that the Administrative Law Judge ("ALJ") erred in concluding that she did not qualify as disabled because, when assessing her ability to work at step four of the five-step evaluation process prescribed by regulation, he failed to discuss her non-severe mental impairment, which he had found at step two. Pending before the Court are Taylor's motion to reverse the Commissioner's decision and the Commissioner's motion to affirm that decision. Discerning no error, the Court will deny Taylor's motion and grant the Commissioner's motion. Read as a whole, the ALJ's decision establishes that he properly considered all of Taylor's impairments and limitations, including her adjustment disorder and mental limitations, in determining her capacity to work.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Acting Commissioner of the Social Security Administration, Leland Dudek, is substituted as the defendant in this action.

## BACKGROUND

**I.     Statutory and Regulatory Framework.**

The Social Security Administration administers the SSDI program by providing disability insurance to covered workers. *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a). Under the Social Security Act, a claimant "seeking disability benefits must prove that she is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Sacilowski v. Saul*, 959 F.3d 431, 433 (1st Cir. 2020) (quoting 42 U.S.C. § 423(d)(1)(A)). To determine if the claimant is disabled within the meaning of the Act, the "ALJ employs a five-step test," which "asks questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted." *Id.* The five steps proceed as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5 (citing 20 C.F.R. § 416.920). While the "claimant bears the burdens of production and persuasion at steps one through four," the ALJ must, at step five, "come forward with evidence of jobs in the national economy that the claimant is able to perform." *Sacilowski*, 959 F.3d at 434.

As relevant here, for purposes of step two, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic

work activities." 20 C.F.R. § 404.1522(a). To determine whether a mental impairment is severe, the ALJ considers the so-called "paragraph B" criteria, which consist of "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 404.1520a(c)(3). If the ALJ rates a claimant's limitations as "none" or "mild," he "will generally conclude that [her] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [her] ability to do basic work activities." *Id.* § 404.1520a(d)(1). Also pertinent in this case is a claimant's residual functional capacity ("RFC"), which "is the most [she] can still do despite [her physical or mental] limitations." *Id.* § 404.1545(a)(1); *see Bowen v. City of New York*, 476 U.S. 467, 471 (1986) (RFC "measures the claimant's capacity to engage in basic work activities."). When assessing a claimant's RFC to perform the requirements of past relevant work at step four, the ALJ "will consider all of [the claimant's] medically determinable impairments," including those "that are not 'severe.'" 20 C.F.R. §§ 404.1520(f), 404.1545(a)(2).

## II.     Factual and Procedural Background.

Taylor was 54 years old when she applied for SSDI benefits in September 2021. ECF 11, at 56, 79. She is a high school graduate and has not worked since June 2019. *Id.* at 22. Before then, she worked as a business development manager for a health services staffing company and had held similar positions since 2004. *Id.* at 23-27. In her initial application for SSDI, she claimed to suffer from depression and several physical impairments, including chronic obstructive pulmonary disease ("COPD"), sciatica, heart rate issues, pain, and hand mobility limitations. *Id.* at 56.

After the Commissioner denied her application in May 2022 and denied reconsideration of that decision in July 2022, Taylor received a hearing before an ALJ in November 2022. *Id.* at 79. Following that hearing, the ALJ issued a decision again denying Taylor's application in April

2023. *Id.* at 79-89. At step one, the ALJ determined that Taylor had not engaged in substantial gainful activity since the alleged onset of her disability on June 1, 2019. *Id.* at 81. At step two, he determined that she had "the following severe impairments: asthma, COPD, obesity, cervical degenerative disc disease, and osteophytes at L1-2 through L4-5." *Id.* at 82. Turning to mental impairments, the ALJ determined that Taylor's adjustment disorder was a medically determinable mental impairment that would cause her no more than "mild" limitations in each of the four "paragraph B" areas of mental functioning. *Id.* at 82-84. He also explained that his RFC analysis at step four "reflects the degree of limitation" he "found in the 'paragraph B' mental function analysis." *Id.* at 84. At step three, the ALJ concluded that Taylor did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in the Social Security regulations. *Id.* at 84-85. At step four, the ALJ found that Taylor had the RFC "to perform light work as defined in 20 CFR 404.1567(b)," with some exceptions, and noted the frequency with which she could execute a variety of physical motions and be exposed to certain environmental stressors. *Id.* at 85 (emphasis omitted). With respect to Taylor's mental impairment, the ALJ did not explicitly address her non-severe adjustment disorder, but he noted that Taylor sees a therapist weekly for depression and anxiety, and he recounted her testimony about her mental limitations. *Id.* at 86. Overall, the ALJ determined that she could perform her past relevant work as a business services sales agent because this work would "not require the performance of work-related activities precluded by [her] residual functional capacity." *Id.* at 88. The ALJ concluded, accordingly, that Taylor was not disabled within the meaning of the Social Security Act. *Id.* at 88-89.

Following the Appeals Council's denial of Taylor's request to review the ALJ's decision in January 2024, that decision became the final decision of the Commissioner. *Id.* at 1-3. In March

2024, Taylor filed this action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). ECF 1. She moved to reverse the Commissioner's decision in June 2024, and the Commissioner moved to affirm that decision in July 2024. ECF 12, 15. The Court held a hearing on the parties' competing motions in October 2024. ECF 26.

## STANDARD OF REVIEW

The Social Security Act authorizes district courts "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's factual findings are "conclusive" if "supported by substantial evidence." *Id.* The court's role is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." *Seavey*, 276 F.3d at 9. Courts "review questions of law de novo, but defer to the Commissioner's findings of fact, so long as they are supported by substantial evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (discussing "the substantial-evidence standard"). Such findings are not entitled to deference "'when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" *Sacilowski*, 959 F.3d at 437 (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).

## DISCUSSION

Taylor's appeal of the Commissioner's decision raises a single issue: whether the ALJ committed an error of law by failing to discuss Taylor's non-severe mental impairment and mild mental limitations found at step two in fashioning her RFC at step four. ECF 13, at 3, 6 n.1. At step two, the ALJ concluded that Taylor's only medically determinable mental impairment— adjustment disorder—would cause her no more than "mild" limitations. ECF 11, at 83-84. At step

four, he addressed some of Taylor's evidence concerning her mental limitations, but he did not expressly mention her non-severe adjustment disorder again. Taylor contends that this omission constitutes reversible error. The Commissioner, for his part, argues that the ALJ was not required to expressly address Taylor's mental impairment and mild mental limitations in his step-four RFC analysis, where it is clear from the opinion as a whole that he considered those limitations in evaluating Taylor's RFC.

An ALJ must, as explained, "consider all of [a claimant's] medically determinable impairments," even those that are not "severe," in assessing the claimant's RFC. 20 C.F.R. § 404.1545(a)(2). According to 1996 guidance from the Commissioner, "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process," and "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragrap[h] B." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). As the First Circuit observed, "a finding of non-severity does not relieve an ALJ of his obligation to consider a non-severe impairment's impact on a claimant's overall medical condition." *Sacilowski*, 959 F.3d at 440 (citing SSR 96-8p, at *5).

Here, the ALJ satisfied this obligation by adequately considering Taylor's non-severe mental impairment and mild mental limitations in fashioning her RFC. At step two, the ALJ stated that he had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." ECF 11, at 82; *see Lopez v. Kijakazi*, 704 F. Supp. 3d 279, 287-88 n.6 (D. Mass. 2023) ("By discussing the plaintiff's migraines in some depth at step two, the ALJ is presumed to have considered that impairment to

the same extent in determining the claimant's RFC," given that "the ALJ acknowledge[d] that he was required to consider all the plaintiff's severe and non-severe impairments in determining her RFC."). He cited the psychological consultative examiner's assessment of Taylor, which did "not endorse any mental functional limitations," as one of the reasons why her adjustment disorder did not constitute a severe impairment. ECF 11, at 83. The ALJ also discussed Taylor's mental abilities and regular activities at length in examining the paragraph B criteria. *See id.* at 83-84. Finally, at the end of his step-two analysis, the ALJ wrote that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

*Id.* at 84. These first two sentences are consistent with agency guidance. *See* SSR 96-8p, at *4. And the last sentence indicates that the ALJ's consideration of the paragraph B criteria informed his step-four RFC determination. *See Robles v. Comm'r of Soc. Sec.*, No. 19-cv-1148-GLS, 2021 WL 3553788, at *4, *6 (D.P.R. Aug. 11, 2021) (concluding the same and that, based on nearly identical language at step two, the ALJ sufficiently considered all of the claimant's impairments, including her mild mental impairment, in formulating her RFC); *Margarita R.T. v. Comm'r of Soc. Sec.*, No. 23-cv-1028-GLS, 2024 WL 1297882, at *3, *6 (D.P.R. Mar. 27, 2024) (similar); *Benelli v. Comm'r of Soc. Sec.*, No. 14-cv-10785-MBB, 2015 WL 3441992, at *20, *28 (D. Mass. May 28, 2015) (similar).

Next, at step four, the ALJ stated that in making his RFC determination, he "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." ECF 11, at 85. He subsequently

described the physical and mental symptoms that allegedly stemmed from Taylor's various impairments, including her depression and anxiety. *See id.* at 86. The ALJ then found that Taylor's "statements concerning the intensity, persistence and limiting effects of these systems [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* He thus chose not to credit Taylor's complete account of her physical and mental symptoms in formulating her RFC. The ALJ also observed, among other things, that Taylor was not "taking any medication for psychiatric impairments," had "never been hospitalized due to psychiatric symptoms," and "listen[ed] to audiobooks five to eight hours per day." *Id.* at 86.

The Commissioner concedes that most of the discussion of Taylor's mental limitations occurred at step two. ECF 16, at 11. Taylor contends that relying on this step-two analysis is improper because the ALJ was required to either include the mild mental limitations that he found at step two in his RFC assessment at step four or explain why he omitted those limitations from that assessment. This argument elevates form over substance. It is also inconsistent with First Circuit precedent, which instructs that the ALJ's analysis must be viewed "as a whole." *See Duffy v. Berryhill*, No. 17-1931, 2019 WL 2352960, at *1 (1st Cir. May 30, 2019) ("[E]ven if the record arguably could support an RFC assessment that includes limitations in neck movement, it was reasonable, viewing the record evidence as a whole, for the ALJ to omit such a limitation from the RFC finding."); *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (court must "revie[w] the evidence in the record as a whole" when assessing whether the Commissioner's findings are supported by substantial evidence); *see also Furey v. Saul*, 501 F. Supp. 3d 29, 52 (D. Mass. 2020) ("'[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at [multiple] steps[.]'" (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004))). When read as a whole, the ALJ's decision

makes clear that he considered Taylor's non-severe mental impairment and mild mental limitations in fashioning her RFC. *See Sacilowski*, 959 F.3d at 440; *Furey*, 501 F. Supp. 3d at 51-52 (ALJ "properly considered [claimant's] back pain" in assessing her RFC by "devot[ing] a lengthy paragraph" to it at step two).

Taylor's principal reliance on *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), is misplaced. In *Wells*, the Tenth Circuit reversed the ALJ's decision because it was unsupported by substantial evidence. 727 F.3d at 1065, 1069; *see Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) ("Ultimately, the problem in *Wells* was that the [ALJ's] discussion was not supported by substantial evidence."). As a result, the Tenth Circuit did not reach the issue of whether the ALJ improperly disregarded the non-severe mental impairments found at step two in his step-four RFC analysis. *See Wells*, 727 F.3d at 1069 (concluding that "we need not determine whether the [ALJ's] discussion" of the claimant's mental impairments in his RFC determination at step four, "though far from comprehensive," "was procedurally adequate").

In this case, by contrast, Taylor does not challenge the ALJ's weighing of the evidence. ECF 13, at 6 n.1. Unlike the ALJ in *Wells*, the ALJ here did not make any affirmative statement at step two suggesting that he excluded Taylor's mental impairment from his RFC determination at step four because it was non-severe. *See* 727 F.3d at 1065, 1069. Nor did the ALJ otherwise conflate his analysis at those two steps. He recognized that "a more detailed [RFC] assessment" was required at step four despite "[t]he limitations identified in the 'paragraph B' criteria" at step two. ECF 11, at 84; *see Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (distinguishing *Wells* on this same ground based on substantively similar language). He also discussed Taylor's mental symptoms at step four. *See* ECF 11, at 86; *Suttles*, 543 F. App'x at 826 ("hold[ing] that the ALJ conducted a mental RFC assessment separate from the non-severity determination made at

9

step two," where "the ALJ discussed evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment on the RFC" at step four); *Munoz v. Comm'r of Soc. Sec.*, No. 22-cv-1492-BJM, 2024 WL 1172666, at *9 (D.P.R. Mar. 19, 2024) ("[T]he ALJ's evaluation of the paragraph B criteria was sufficient" because she "evaluated the paragraph B criteria at Step Two," "incorporated this analysis when forming [claimant's] RFC," and "discussed [his] mental condition in her evaluation of his RFC."). Accordingly, the ALJ committed no reversible error of law in his step-four RFC analysis.

## CONCLUSION AND ORDER

For the foregoing reasons, Taylor's motion to reverse the Commissioner's decision, ECF 12, is DENIED, and the Commissioner's motion to affirm that decision, ECF 15, is GRANTED. The Commissioner's decision is AFFIRMED.

SO ORDERED.

Dated: March 10, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE